**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUN 1 6 2010 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------- X

HASKER MCLEOD,

                      Petitioner,

        - against -

J.F. BELLNIER, Superintendent,

                    Respondent.

-------------------------------------------------------- X

**MEMORANDUM**
**DECISION AND ORDER**

09 Civ. 3493 (BMC)

**COGAN**, District Judge.

      This matter is before the Court on petitioner, Hasker McLeod's ("McLeod"), § 2254 petition for a writ of habeas corpus. For the reasons set forth below, the petition is denied and the case is dismissed.

**BACKGROUND**

      On December 28, 2003, McLeod held his family members hostage in their home when he locked his four-year-old niece in the basement and tied up his eighty-one-year old mother and adult niece, Felice Franklin ("Franklin"). During this two and a half hour ordeal, McLeod wielded a steak knife and repeatedly demanded that his mother and Franklin give him money and car keys. When both women refused his demands, McLeod rummaged through the house until he found one hundred dollars and the keys to Franklin's 2000 Ford Explorer. McLeod then fled with the money and Franklin's car.

      On January 9, 2004, a Bronx police officer discovered McLeod in Franklin's car and arrested him. After the officer read him his Miranda rights, McLeod confessed to stealing his niece's car, tying up his niece and mother, and taking their money. He claimed that he had been

smoking crack at the time and that the drugs made him do those things. McLeod was then transferred to a police precinct in Queens where he again confessed, both orally and in writing, to tying up his niece and mother and stealing his niece's car. McLeod was subsequently charged with two counts of Robbery in the First Degree; Robbery in the Second Degree; Grand Larceny in the Third Degree; Grand Larceny in the Fourth Degree; two counts of Unlawful Imprisonment in the First Degree; Unauthorized Use of a Vehicle in the Third Degree; and Endangering the Welfare of a Child.

The prosecution's case at trial included McLeod's two confessions and testimony by Franklin. On November 18, 2004, the jury issued a verdict acquitting McLeod of the robbery charges against his mother, but convicting him of one count of Robbery in the First Degree; Grand Larceny in the Third Degree; two counts of Unlawful Imprisonment in the Second Degree; and Endangering the Welfare of a Child.[1] McLeod was sentenced as a mandatory persistent violent felony offender to indeterminate prison terms of from twenty years to life for first-degree Robbery, from three and one-half to seven years for third-degree Grand Larceny, and one year for each of the remaining counts, with all sentences to run concurrently.

On appeal, McLeod's counsel raised one claim – that his guilt was not proven beyond a reasonable doubt and that the verdict was against the weight of the evidence. The Second Department affirmed McLeod's conviction, and the Court of Appeals denied leave to appeal. People v. McLeod, 50 A.D.3d 923, 854 N.Y.S.2d 672 (2d Dep't), leave to app. den., 10 N.Y.3d 961, 863 N.Y.S.2d 145 (2008).

---

[1] During the course of the trial, the prosecution consented to dismissal of the charges of Robbery in the Second Degree and Grand Larceny in the Fourth Degree. The Court, on motion by McLeod's counsel, also reduced the two counts of Unlawful Imprisonment from first-degree to second-degree, and dismissed the count for Unauthorized Use of a Vehicle in the third-degree.

Thereafter, McLeod made several attempts to challenge his conviction in state court on the grounds that he was denied effective assistance of both trial and appellate counsel. On July 17, 2009, McLeod brought a motion under New York Criminal Procedure Law section 440.10 ("440 Motion"), in which he asserted six grounds of ineffective assistance of trial counsel. On November 4, 2009, the Supreme Court, Queens County, denied his motion and held that his claim was procedurally barred under N.Y. CRIM. PROC. LAW § 440.10(2)(c) because he failed to raise it on direct appeal, and that it was also without merit. McLeod's motion for leave to appeal this decision is still pending before the Appellate Division, Second Department.

McLeod has also previously challenged the effectiveness of his appellate counsel in two coram nobis applications. In the first coram nobis, McLeod claimed appellate counsel was ineffective for failing to raise all key issues on appeal, including that trial counsel was ineffective. The Second Department summarily denied this application, and the Court of Appeals denied leave to appeal. People v. McLeod, 63 A.D.3d 1180, 881 N.Y.S.2d 312 (2d Dep't), aff'd, 13 N.Y.3d 798, 887 N.Y.S.2d 547 (2009). In his second coram nobis, McLeod only claimed that counsel was ineffective for failing to argue that trial counsel was ineffective. The Appellate Division denied this application, and the Court of Appeals recently denied leave to appeal. People v. McLeod, 69 A.D.3d 960, 892 N.Y.S.2d 785 (2d Dep't ), aff'd, 14 N.Y.3d 842 (2010).

Petitioner now brings this petition seeking habeas relief, under 28 U.S.C. § 2254, once again asserting that he was denied effective assistance of trial and appellate counsel.

## DISCUSSION

## I.  Ineffective Assistance of Trial Counsel

In his petition for habeas relief, McLeod incorporates the claims he raised in his 440 Motion.  Specifically, he argues that his trial counsel was ineffective for: (1) failing to move for a mistrial based on an alleged Brady or Rosario violation; (2) failing to object to hearsay testimony; (3) failing to request a jury charge on the voluntariness of his confessions; (4) failing to object to the trial court's response to a jury request to reread the definition of robbery; (5) failing to object to an amendment of the indictment; and (6) failing to object to statements made by the District Attorney during opening and closing statements.

Respondent asserts that McLeod's claim of ineffective assistance of trial counsel is unexhausted, but that it should nonetheless be dismissed because it is both subject to an independent and adequate state procedural bar and patently frivolous.

### A. Exhaustion Requirement

Habeas corpus relief is available to a petitioner held in state custody in violation of the Constitution or a federal law or treaty.  28 U.S.C. § 2254(a).  It is well-settled that a federal court may not grant habeas relief to a state prisoner, unless the prisoner has first exhausted his remedies in state court.  28 U.S.C. § 2254(b)(1)(A); Aparicio v. Artuz, 269 F.3d 78, 89 (2d Cir. 2001).  In order to "satisfy § 2254's exhaustion requirement, a petitioner must present the substance of the same federal constitutional claims that he now urges upon the federal courts, to the highest court in the pertinent state." Aparicio, 269 F.3d at 89 (internal citations and quotation marks omitted).  A claim is considered unexhausted if the petitioner "has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

4

In this case, petitioner's ineffective assistance of trial counsel claim is unexhausted because his request for leave to appeal is still pending. See id.

## B. Procedural Default

"Nonetheless, even if a federal claim has not been presented to the highest state court or preserved in lower state courts under state law, it will be deemed exhausted if it has become procedurally barred under state law." St. Helen v. Senkowski, 374 F.3d 181, 183 (2d Cir. 2004) (per curiam). When a "state prisoner has defaulted his federal [claim] in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the [claim] is barred." Dunham v. Travis, 313 F.3d 724, 729 (2d Cir. 2002) (quoting Coleman v. Thompson, 501 U.S. 722, 750, 111 S. Ct. 2546 (1991)).

In New York, a defendant is authorized only one request for review of a conviction. See N.Y. CT. RULES §§ 500.9 and 500.10. If a defendant fails to raise a claim on direct review that could have been raised, he will be foreclosed from further collateral review under New York's procedural default rule. N.Y. CRIM. PROC. LAW § 440.10(2)(c). The Second Circuit has repeatedly recognized § 440.10(2)(c) to be an independent and adequate bar to federal habeas review. See, e.g., Clark v. Perez, 510 F.3d 382, 390-91 (2d Cir. 2008); Jimenez v. Walker, 458 F.3d 130, 148-49 (2d Cir. 2006); St. Helen, 374 F.3d at 183. This includes in cases where a petitioner has failed to exhaust an on-the-record claim of ineffective assistance of counsel. See, e.g., Sweet v. Bennett, 353 F.3d 135, 139-40 (2d Cir. 2003) (clarifying that New York's procedural default rule can bar federal review of a § 2254 petition that asserts claims of ineffective assistance of counsel).

McLeod's 440 Motion was denied as procedurally barred under § 440.10(2)(c) for his failure to raise an on-the-record ineffective assistance claim on direct appeal.[2] Although the court noted that "[w]ere [it] to address the merits of the motion, it would likewise be denied," this alternative holding does not undermine the court's explicit invocation of New York's procedural default rule as the basis for denying McLeod's claim. See Murden v. Artuz, 497 F.3d 178, 191 (2d Cir. 2007) ("Even where the state court has ruled on the merits of a federal claim 'in the alternative,' federal habeas review is foreclosed where the state court has also expressly relied on the petitioner's procedural default.") (quoting Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005) (citation omitted)); see, e.g., Fong v. Poole, 522 F. Supp. 2d 642, 656 (S.D.N.Y. 2007) (finding the Appellate Division expressly relied on New York's procedural bar in rejecting petitioner's claim, despite the use of language "were we to review" the claim on the merits).

Therefore, as McLeod's claim of ineffective assistance of trial counsel is procedurally barred under New York law, it is deemed procedurally defaulted for purposes of habeas review.

## C. Exception to Procedural Default

A petitioner may cure a procedural default by making a "showing of cause for the default plus prejudice, or a showing of actual innocence." Aparicio, 269 F.3d at 91; Bousley v. United States, 523 U.S. 614, 622, 118 S. Ct. 1604 (1998). McLeod is unable to make either showing.

### (1) Cause and Prejudice

"[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded ... efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2678 (1986);

---

[2] McLeod's claim is clearly an on-the-record ineffective assistance of counsel claim, as the record contains sufficient facts to review trial counsel's failure to make objections, request a jury charge, and move for a mistrial. See N.Y. CRIM. PROC. LAW § 440.10(2)(c); see, e.g., Sweet, 353 F.3d at 140 (trial counsel's failure to object was well-established in the trial record); Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997) (finding trial counsel's failure to object to a jury charge to be resolvable on the record).

see Coleman, 501 U.S. at 753 ("'cause' under the cause and prejudice test must be something *external* to the petitioner, something that cannot fairly be attributed to him"). Examples of cause include: (1) proof that "the factual or legal basis for a claim was not reasonably available to counsel;" (2) "some interference by state officials made compliance [with the procedural rule] impracticable;" or (3) "the procedural default is the result of ineffective assistance of counsel." Bossett v. Walker, 41 F.3d 825, 829 (2d Cir. 1994) (internal citation and quotation marks omitted). To show prejudice, a petitioner must show "actual and substantial disadvantage," not merely the possibility of prejudice. Mallard v. United States, Nos. 98-cv-7507 and 95-cr-379, 2009 WL 1873665, at *2 (E.D.N.Y. June 29, 2009).

McLeod contends that his claim is not procedurally defaulted and suggests that, even if it is, the default was due to the ineffective assistance of his appellate counsel, relying on Massaro v. United States, 538 U.S. 500, 123 S. Ct. 1690 (2003). His argument fails, and his reliance on Massaro is misplaced. Although the Supreme Court did hold in Massaro that an ineffective assistance of counsel claim may be brought in a collateral proceeding under § 2255, regardless of whether the petitioner could have raised the claim on direct appeal, the Second Circuit has since clarified that "Massaro is not a constitutional decision, and by its own language it did not extend its rule beyond [a] § 2255 [habeas petition]." Sweet, 353 F.3d at 140.

Second, although a claim of ineffective assistance of counsel may establish cause for a procedural default, counsel's representation must rise to the level of a constitutional deficiency. Murray, 477 U.S. at 488-89. As discussed *infra*, since appellate counsel's representation was not ineffective, McLeod has failed to make a showing of cause for his default. In the absence of cause for the procedural default, this Court need not address prejudice. See Stepney v. Lopes, 760 F.2d 40, 45 (2d Cir. 1985).

7

### (2) Actual Innocence

Even in the absence of a showing of cause, a court may excuse a procedural default "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray, 477 U.S. at 496. "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." Schlup v. Delo, 513 U.S. 298, 324, 115 S. Ct. 851 (1995). "[P]etitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Id. at 327.

McLeod does not explicitly make an actual innocence claim; rather, he appears to suggest that his "defense of innocence" was undermined by his trial counsel's failure to seek a jury charge as to the voluntariness of his two confessions. However, he has not pointed to any new evidence that was not presented at trial, nor does he suggest that any even exists, which would indicate that he is "actually" innocent. See, e.g., Sweet, 353 F.3d at 142-43 (noting that "because 'actual innocence' means factual innocence rather than just legal insufficiency, the question does not turn on whether [petitioner's] counsel could have made a successful objection to the jury charge .... [rather] the question depends on whether it is more likely than not that no reasonable juror would have concluded that [petitioner] engaged in conduct that meets the required elements of each of the charges"). To the contrary, his own confessions and testimony from one of his victims are indicative of his actual guilt.

Accordingly, since McLeod is unable to cure his procedural default, his claim of ineffective assistance of trial counsel is barred from federal review.

## II.    Ineffective Assistance of Appellate Counsel

In asserting his claim for ineffective assistance of appellate counsel, McLeod once again incorporates the claims he raised in his two state coram nobis petitions. In his first coram nobis, McLeod claimed that his appellate counsel was ineffective "when [she] failed to use all key issues in [his] appeal brief." Specifically, he contends that counsel (1) failed to raise issues he referenced in his letters to her; (2) failed to assert a claim of ineffective assistance of trial counsel; and (3) decided to raise only one issue on appeal that was not preserved at trial. In his second coram nobis, McLeod claimed that counsel was ineffective for failing to argue that trial counsel was ineffective.

Respondent contends that McLeod's ineffective assistance of counsel claim is exhausted and should be denied because the state courts reasonably applied Supreme Court precedent when it adjudicated his claim on the merits.[3]

### A.  Exhaustion Requirement

For a coram nobis application in New York to be exhausted, a petitioner must seek leave to appeal the denial of his application to the New York Court of Appeals. N.Y. CRIM. PROC. LAW § 450.90(1); see Shomo v. Maher, No. 04-cv-4149, 2005 WL 743156, *4 (S.D.N.Y. Mar. 31, 2005) (petitioner did not exhaust his state remedy because he did not seek leave to appeal the denial of his coram nobis application to the New York Court of Appeals).

McLeod properly exhausted both of his coram nobis petitions when the Court of Appeals denied him leave to appeal his first coram nobis on September 8, 2009, and his second on April 26, 2010.

---

[3] Respondent's original argument that McLeod's second coram nobis was unexhausted is moot in light of the Court of Appeals' recent decision.

**B. Standard of Review**

A federal habeas court may overturn a state court's ruling on the merits of a claim only if the state decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413, 120 S. Ct. 1495 (2000). A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." Id.

This deferential standard of review established by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies whenever a state court disposes of a state prisoner's federal claim on the merits and reduces its disposition to judgment, regardless of whether it refers to federal law in its decision. Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001). Accordingly, this Court must give AEDPA deference to the Appellate Division's summary denial of McLeod's coram nobis applications, as they constitute a state adjudication on the merits of his claim of ineffective assistance of appellate counsel. See, e.g., Aparicio, 269 F.3d at 94 (finding there was a state adjudication on the merits where the Appellate Division summarily denied petitioner coram nobis relief).

## C. Application of <u>Strickland v. Washington</u>

Claims of ineffective assistance of counsel are governed by the two-part test articulated in <u>Strickland v. Washington</u>, which requires a petitioner to show (1) that his counsel's assistance was objectively unreasonable and (2) that, but for counsel's ineffectiveness, there is a reasonable probability that the outcome at the trial would have been different, 466 U.S. 668, 687-88, 694, 104 S. Ct. 2052 (1984). A court may reject an ineffective assistance of counsel claim for failure to satisfy either prong under <u>Strickland</u>, without reaching the other. <u>Id.</u> at 697. The <u>Strickland</u> test applies to claims of ineffective assistance of both trial and appellate counsel. <u>Mayo v. Henderson</u>, 13 F.3d 528, 533 (2d Cir. 1994).

It is well-settled that appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." <u>Smith v. Robbins</u>, 528 U.S. 259, 288, 120 S. Ct. 746 (2000) (citing <u>Jones v. Barnes</u>, 463 U.S. 745, 750-54, 103 S. Ct. 3308 (1983)). When deciding what claims to pursue, appellate counsel "need not advance every argument, regardless of merit, urged by [her client]." <u>Evitts v. Lucey</u>, 469 U.S. 387, 394, 105 S. Ct. 830 (1985). Although it remains theoretically possible to bring a claim for ineffective assistance of counsel, appellate counsel's choices with regard to which issues to raise on appeal are "virtually unchallengeable." <u>Strickland</u>, 466 U.S. at 690-91. Reviewing courts should give deference to the professional judgment of appellate counsel as to which issues are most promising. <u>Jones</u>, 463 U.S. at 745. As the Second Circuit has reasoned:

> When a claim of ineffective assistance of counsel is based on failure to raise viable issues, the district court must examine the trial court record to determine whether appellate counsel failed to present significant and obvious issues on appeal. Significant issues which should have been raised should then be compared to those which were raised. Generally, only when ignored issues are

11

clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.

Mayo, 13 F.3d at 533 (quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1985)).

McLeod is unable to satisfy both prongs of the Strickland analysis for any of the grounds for which he predicates his ineffective assistance of appellate counsel claim. Accordingly, this Court finds that the state court's rejection of his ineffective assistance of counsel claim was neither contrary to, nor an unreasonable application of federal law.

### *(1) Issues Raised in Letters to Appellate Counsel*

Between June 7, and July 3, 2007, McLeod sent three letters to appellate counsel in which he posed eight questions and indicated that they "may or may not be issues" to raise on appeal. Appellate counsel responded to his inquiries in letters dated June 11, and July 9, 2007. In those letters, counsel answered all of McLeod's questions and stated that seven of the issues had no merit and explained why. Counsel indicated that one of the issues McLeod raised – whether the prosecution proved his guilt of robbery in the first-degree beyond a reasonable doubt – was the issue she was going to raise on appeal. She explained that this was the best claim to pursue because the evidence suggested that he merely "displayed" the knife, rather than threatened to use it to cut or stab his family members. Moreover, she noted that if this claim was successful, his conviction would be modified to a lesser degree of robbery and he would be resentenced without having to be re-tried. Counsel provided McLeod with a draft of the brief and directed him to contact her with any questions or comments, which he did not. She also forwarded him a copy of the final brief and advised him to file a *pro se* supplemental brief if there were any additional issues he wished to raise on appeal, which he never did.

In his § 2254 petition, McLeod suggests that appellate counsel was ineffective for failing to include in his appeal seven of the eight issues he referenced in letters.[4] Respondent contends that appellate counsel's performance was effective because she thoroughly considered all of these issues, properly omitted those that lacked merit, and strategically pursued only the most meritorious issue on appeal.

### a. Whether the trial court verdict was a repugnant verdict

First, McLeod questioned counsel as to whether the jury's verdict was repugnant because he was found guilty of robbing Franklin, but not his mother. "Whether verdicts are repugnant or inconsistent ... is determined by examining the charge to see the essential elements of each count, as described by the trial court, and determining whether the jury's findings on those elements can be reconciled." Sweet, 353 F.3d at 143 (Walker, Jr., J., concurring) (citing People v. Loughlin, 76 N.Y.2d 804, 559 N.Y.S.2d 962 (1990)). Under New York law, "[t]wo counts are 'inconsistent' when guilt of the offense charged in one necessarily negates guilt of the offense charged in the other." N.Y. CRIM. PROC. LAW § 300.30(5).

In this case, the jury's verdict was not repugnant; rather, McLeod was merely found guilty of robbing one victim, and not another. It was not necessary for the jury to find McLeod guilty of robbing his mother to find him guilty beyond a reasonable doubt of the first-degree robbery of Franklin. Therefore, McLeod has failed to satisfy the first prong under Strickland.

### b. Whether the court erred in allowing the amendment of the indictment

Next, McLeod inquired as to whether the trial court erred in allowing the District Attorney to amend the indictment to reflect that he forcibly took Franklin's car keys, rather than

---

[4] Although McLeod refers generally to the issues raised in his letters, appellate counsel did in fact raise one of those issues on appeal – whether he was found guilty of robbery beyond a reasonable doubt – and as such, that issue will not be addressed by this Court.

her car.[5]  Pursuant to N.Y. CRIM. PROC. LAW § 200.70, a trial court is authorized to permit the amendment of an indictment, at any time before or during trial, with "respect to defects, errors or variances from the proof relating to matters of form, time, place, names of persons and the like," provided that the proposed amendment does not change the theory of the prosecution or otherwise serve to prejudice the defendant on the merits.

Here, the District Attorney sought to amend the indictment to make it consistent with the evidence presented to the grand jury, after McLeod's trial counsel pointed out the inconsistency. The grand jury had been presented with evidence that McLeod used force to take the car keys – not the car.  This was a permissible amendment to the indictment, see People v. Fullwood, 484 N.Y.S.2d 931, 932-33 (3d Dep't 1985) (amendment was proper where it conformed the indictment to proof put before the Grand Jury), and counsel's decision not to challenge it was not objectively unreasonable.

### c.  Whether he should have been offered a plea before trial

McLeod also raised concerns that he was not offered a plea bargain.  It was completely reasonable for appellate counsel not to pursue this meritless claim because there is no constitutional duty placed on a prosecutor to offer, or a constitutional right for a defendant to receive, a plea bargain.  Weatherford v. Bursey, 429 U.S. 545, 561, 97 S. Ct. 837 (1977).

### d.  Whether he was accorded a speedy trial

In addition, McLeod questioned whether he was accorded a speedy trial.  In determining whether there has been a violation of the Sixth Amendment speedy trial right, courts consider four factors: (a) the length of the delay and whether it was uncommonly long; (b) the reason for the delay, including whether the prosecution or the defendant was responsible for it; (c) the

---

[5] Petitioner's papers incorrectly cite that the indictment was amended to "reflect the defendant's forcible taking of the *automobile* as opposed to the …*car's keys*."

defendant's assertion of the right; and (d) whether the defendant suffered prejudice as a result of the delay. Doggett v. United States, 505 U.S. 647, 651, 112 S. Ct. 2686 (1992) (citing Barker v. Wingo, 407 U.S. 514, 530, 92 S. Ct. 2182 (1972)).

There were no speedy trial motions made during the criminal proceedings, nor does the record suggest that the state exceeded its speedy trial time. To the contrary, appellate counsel properly noted that McLeod's case proceeded to trial and resolution very quickly – within one year of his arrest. Therefore, as both the record and time frame indicate that there was no speedy trial issue counsel's performance was constitutionally adequate.

e. Whether his confessions should have been suppressed

McLeod further inquired as to whether either of his two confessions to the police should have been suppressed, or if counsel was aware of any issues that could be raised in connection with the suppression hearing. Prior to trial, McLeod's counsel had argued that his confessions should be suppressed because he was under the influence when he gave the first confession, and he was not re-read his Miranda rights prior to giving his second confession. This issue was litigated in a pre-trial Huntley hearing before the Queens County Supreme Court, which ultimately determined that the statements had been made voluntarily.

In regards to his first statement, McLeod's contention that he was intoxicated standing alone, is insufficient to render his statement involuntary. "Only where it is demonstrated that the defendant was intoxicated to a degree of mania or of being unable to understand the meaning of his statements is suppression warranted." People v. Arevalo, 862 N.Y.S.2d 586, 586 (2d Dep't 2008).

In this case, the evidence suggests that McLeod was not intoxicated to such a degree that would warrant suppression of his first confession. His confession consisted of a hand written

statement to the police that was cogent and comprehensible, and was substantially the same as his second confession, which was made several hours later. See, e.g., People v. Carelli, 838 N.Y.S.2d 708 (3d Dep't 2007) (finding defendant's confession was not rendered involuntary by his self-induced drugged state, where confession was "made in a coherent manner, describing a series of events that comported with eyewitness testimony" and was "consistent with an admission that defendant later made to an acquaintance"). Moreover, the evidence and testimony of the arresting officer put forth at the Huntley hearing, supports the court's determination that McLeod recognized the immediate import of his *Miranda* warnings.

Given that the facts in the record indicate that McLeod's first written confession was voluntary, appellate counsel was not ineffective for failing to raise the voluntariness of this confession on appeal. Moreover, even if his second confession should have been suppressed because too much time had passed since he had been given his Miranda warnings, appellate counsel had advised McLeod that she saw no strategic benefit in asserting this claim, since McLeod's first confession would still have been admissible. Thus, McLeod has failed to establish that counsel's performance was objectively unreasonable.

      f.  Whether the District Attorney's statements during sentencing were permissible

McLeod also raised concerns as to whether the District Attorney was permitted to make statements during sentencing about a charge for which he was acquitted. In New York, a defendant will not be entitled to a reduction of sentence or to resentencing on the grounds that inaccurate or prejudicial statements were made before the sentencing court, absent evidence that the "sentencing court relied on the allegedly inaccurate information when it sentenced the defendant." People v. Sumpter, 729 N.Y.S.2d 506 (2d Dep't 2001); see also People v. Tavarez, 652 N.Y.S.2d 519 (1st Dep't 1997).

McLeod does not identify what statements he is referring to, nor does he put forth any evidence that suggests the court sentenced him based on inaccurate information. There is no indication in the record that the prosecutor made specific references to McLeod robbing his mother during sentencing. The only possible statements that McLeod could be referring to are those in which the prosecutor stated that his mother was one of his victims and that he tied her up. For example, the D.A. noted: "He has dedicated his life to crime and now he's attacking his own family, his vulnerable 81 year old mother." However, these statements are consistent with the jury's findings that he unlawfully imprisoned and tied up his mother.

Moreover, as appellate counsel noted in her response to McLeod, "[a]lthough at one point the court did refer to you robbing your mother, the judge was more focused on your having victimized your mother by tying her up and subjecting her to this ordeal." Since the record supports counsel's conclusion that the judge sentenced McLeod only for robbing his niece, and not his mother, he has failed to satisfy the first prong under <u>Strickland</u>.

g.   <u>Whether he was unconstitutionally sentenced</u>

Finally, McLeod inquired as to whether it was unconstitutional for him to be sentenced under NY PENAL LAW § 70.08 as a persistent violent felony offender. Appellate counsel acknowledged in her letter to petitioner that "there has been an issue regarding the constitutionality of the persistent violent felony offender statute going through the courts," but noted that these issues were raised in the context of non-violent persistent offenders, where the statutory scheme requires trial judges to exercise discretion. <u>See</u> <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 120 S. Ct. 2348 (2000). Counsel explained that since petitioner was a violent, rather than a non-violent persistent offender, there was no discretion as to his sentencing status, and the same constitutional issues did not arise.

The rule established by the Supreme Court in <u>Apprendi,</u> is that any fact, other than the fact of a prior conviction, that may increase the penalty for a crime beyond the prescribed statutory maximum, is required to be submitted to a jury and proved beyond a reasonable doubt. <u>Id.</u> at 490. The facts of this case do not implicate the rule in <u>Apprendi,</u> as both the language of the statute and the record at sentencing make clear, that the trial judge sentenced McLeod based solely on the fact of his prior convictions.

In New York, "[a] persistent violent felony offender, as opposed to a persistent felony offender, is 'a person who stands convicted of a violent felony offense ... after having previously been subjected to two or more predicate violent felony convictions ....'" <u>See</u> <u>Besser v. Walsh,</u> 601 F.3d 163, 170 n.5 (2d Cir. 2010) (quoting N.Y. PENAL LAW § 70.08). "This persistent offender provision requires imposition of an indeterminate sentence with a statutory maximum of life imprisonment solely upon the court's finding of qualifying predicate convictions." <u>Id.</u> At sentencing, the judge recited McLeod's prior criminal history and asked whether he challenged any of his prior convictions, to which he replied no. The judge then determined that based on his prior convictions, McLeod was to be sentenced as a persistent violent felony offender. The judge went on to note, that since McLeod is being sentenced as a persistent violent felony offender, "[t]he law ... affords this Court little discretion" (in fact, it allows no discretion) in imposing a sentence.

Therefore, as the record reflects that McLeod was sentenced based on the trial judge's finding – and McLeod's acknowledgment – that he had the requisite predicate convictions to be sentenced as a persistent violent felony offender, it was not objectively unreasonable for counsel to not raise an <u>Apprendi</u> claim on appeal.

### (2) *Ineffective Assistance of Trial Counsel*

McLeod also asserts that appellate counsel was ineffective for failing to argue on appeal that his trial counsel was ineffective. In both his coram nobis petitions, he cited to the exact same six grounds of ineffective assistance of trial counsel that he had listed in his 440 Motion. As McLeod never posed this issue to appellate counsel in his letters, counsel did not provide him with a detailed explanation as to why she did not raise this claim on appeal. Nonetheless, a review of the record indicates that trial counsel was not ineffective, thus appellate counsel's failure to raise this meritless claim on appeal was not objectively unreasonable.

#### a. Failing to move for a mistrial based on an alleged Brady or Rosario violation

McLeod contends that trial counsel was ineffective for failing to move for a mistrial based on an alleged Brady or Rosario violation when the 911 tape of Franklin's call to the police was destroyed. The record indicates that the tape of the 911 call was destroyed in a relative short period of time and was never in the prosecution's possession.

In order to demonstrate a Brady violation, "a defendant must show that: (1) the Government, either willfully or inadvertently, suppressed evidence; (2) the evidence at issue is favorable to the defendant; and (3) the failure to disclose this evidence resulted in prejudice." United States v. Coppa, 267 F.3d 132, 140 (2d Cir. 2001) (citing Strickler v. Greene, 527 U.S. 263, 281-82, 119 S. Ct. 1936 (1999)). In New York, if Rosario material is lost or destroyed and cannot be produced, a court will impose an appropriate sanction if the prosecution failed to exercise care to preserve the material, and the defendant was prejudiced by their mistake. People v. Martinez, 71 N.Y.2d 937, 524 N.E.2d 134 (1988).

For both Brady and Rosario violations, a defendant must establish that he was *prejudiced* by the lack of evidence. McLeod has failed to establish how he was prejudiced by the

destruction of the 911 tape. In this case, defense counsel was able to obtain the Sprint phone records, which documented the date and time of the call, and the 911 caller – Franklin – testified at trial. In addition, trial counsel did not simply ignore the fact that the 911 tape was destroyed. To the contrary, the record reflects that counsel sought, but was denied, a missing evidence charge based on the destroyed 911 tape. Moreover, it is more likely that McLeod would have been prejudiced by the presence of the tape, since the jury would have heard his niece calling for help just moments after he had wielded a knife in front of her and repeatedly tried to tie up both her and her grandmother.

In light of the evidence that was still available to defense counsel at trial, and the fact that McLeod was more likely to be prejudiced by the presence, rather than the destruction of the 911 tape, trial counsel was not deficient for failing to seek a mistrial, where he had already sought a missing evidence charge and was denied. See People v. Mengstie, 690 N.Y.S.2d 11 (1st Dep't 1999) (destruction of 911 tapes did not warrant adverse inference charge in robbery prosecution, where there was no lack of diligence by the prosecution and the defendant was not prejudiced).

   b. Failing to object to hearsay testimony

McLeod also claims that trial counsel should have objected to what he describes as the "hearsay" testimony of Franklin. He specifically focuses on Franklin's testimony describing how he demanded money from his mother. It was not unreasonable for trial counsel to not object to this testimony, as his verbal threats against his mother and the demands he made for money were admissions, not hearsay. Furthermore, even if counsel did error by not objecting to this testimony, McLeod did not suffer any prejudice because he was acquitted of the crime the testimony centered around – robbing his mother.

c. <u>Failing to request a jury charge on the voluntariness of his confessions</u>

McLeod further argues that trial counsel was ineffective for failing to request a jury charge on the voluntariness of his confessions to the police. As previously noted, McLeod's first confession appears to have been voluntary and the suppression of the second confession would not change the fact that the jury would still have heard evidence of the first confession. That said, the record suggests that trial counsel did argue zealously to have the statements suppressed and that his decision not to seek a voluntariness charge was not a failure on the part of counsel, but rather a strategic maneuver.

At the <u>Huntley</u> hearing, counsel argued vigorously that McLeod's confessions should be suppressed. At trial, when the judge inquired as to whether the defense wanted a jury charge on voluntariness, counsel stated no. This was not an unreasonable decision on the part of defense counsel, as it avoided reminding the jury – immediately prior to them deliberating – that McLeod had admitted not once, but twice, to the police that he tied up his mother and niece, and stole money. In fact, the trial judge even asked McLeod if he understood that the Court would not be charging the jury on the voluntariness of his statements, and he said yes.

Counsel's performance was not constitutionally inadequate for declining to request a jury charge on voluntariness, where it was a strategic decision made in the interest of his client, and his client agreed to the decision on the record.

d. <u>Failing to object to the trial court's response to a jury request</u>

In addition, McLeod claims that when the jury requested that the judge reread the definition of robbery, that trial counsel should have objected because the court did not reread the definition of the underlying terms. Trial counsel's decision to not object to the judge providing an accurate response to exactly what the jury requested was not objectively unreasonable.

Moreover, the fact that defendant was acquitted of robbing his mother demonstrates that he was not prejudiced by the court's failure to re-read the definition of the underlying terms.

### e. Failing to object to the amendment of the indictment

McLeod again argues that trial counsel should have objected the amendment of the indictment. As previously discussed, it was permissible for the prosecution to amend the indictment to reflect that McLeod used force to take the car keys, and not the car, in order to ensure that the indictment was consistent with the evidence put before the grand jury. See Fullwood, 484 N.Y.S.2d at 931. Therefore, trial counsel was not derelict for failing to object to a permissible amendment to the indictment.

### f. Failing to object to statements made by the prosecutor at trial

McLeod also maintains that trial counsel was ineffective for failing to object to the prosecutor's characterization in her opening and closing statements that his relatives were reluctant witnesses. "The government has broad latitude in the inferences it may reasonably suggest to the jury during summation," and "[i]mproper summation statements violate a defendant's due process rights only if they cause substantial prejudice to the defendant." United States v. Edwards, 342 F.3d 168, 181 (2d Cir. 2003) (internal citation and quotation marks omitted). A new trial is appropriate "only when the statements, viewed against the entire argument before the jury, deprived the defendant of a fair trial." United States v. Bermudez, 529 F.3d 158, 165 (2d Cir. 2008) (citation omitted).

First of all, McLeod's assertion is incorrect. Trial counsel did in fact object to that portion of the prosecutor's closing statement and was overruled. Second, the prosecutor's statement suggesting that his family members were reluctant witnesses was amply supported by

the evidence. In this case, McLeod's mother refused to testify, and his own niece testified that she was there pursuant to a court-ordered subpoena.

Therefore, counsel was not deficient in his performance, as he did make objections, and his failure to make additional fruitless objections to permissible statements by the government was not deficient. See, e.g., Cuevas v. Henderson, 801 F.2d 586, 592 (2d Cir. 1986) (holding that defense counsel's failure to object to prosecution's proper summation did not constitute deficient performance).

### (3) Asserting an Unpreserved Issue on Appeal

Finally, McLeod argues that appellate counsel was ineffective for raising an issue on appeal that was not preserved at trial. First of all, McLeod's claim is without merit because this issue did not have to be preserved in the trial court, as it could be reviewed under the intermediate appellate court's factual review power. See People v. Danielson, 9 N.Y.3d 342, 348, 849 N.Y.S.2d 480 (2007). Second, the decision to raise this issue on appeal was reached by both client and attorney after determining that it was the most meritorious claim available. As noted, this issue was, ironically, one of the issues that McLeod suggested counsel pursue on appeal. Counsel agreed with him and explained why she thought it was the most promising claim and how she would argue the facts in his favor. Third, as counsel mentioned in her correspondence with McLeod, had this claim been successful, it would have resulted in a reversal without the possibility of him being re-tried. Accordingly, counsel's performance was not constitutionally inadequate for asserting this one claim on appeal.

On this record, the state court's rejection of McLeod's ineffective assistance of appellate counsel claim was neither contrary to, nor an unreasonable application of, federal law as

enunciated by the Supreme Court in <u>Strickland</u> and, accordingly, his application for habeas relief is denied.

## CONCLUSION

For the reasons set forth above, the petition is dismissed. McLeod has failed to make a substantial showing of the denial of a constitutional right. Therefore, a certificate of appealability shall not issue. 28 U.S.C. § 2253. Further, this Court certifies pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. <u>Coppedge v. United States</u>, 369 U.S. 438, 444-45, 82 S. Ct. 917 (1962). The Clerk of the Court is directed to enter judgment and mail a copy of this Order to petitioner *pro se*.

**SO ORDERED.**

/Signed by Judge Brian M. Cogan/

U.S.D.J.

Dated: Brooklyn, New York
June 16, 2010